■ JOSEPH J.M. SALEH, Plaintiff, v ANGELIKA T. SALEH, Defendant. (Action No. 1.) NAIMA SALEH, Appellant, v ANGELIKA FILMS, INC., et al., Respondents. (Action No. 2.) [657 NYS2d 52] —Order, Supreme Court, New York County (Lewis Friedman, J.), entered December 15, 1995, in Action No. 2, which, insofar as appealed from, granted defendants' motion for summary judgment to the extent of dismissing plaintiff Naima Saleh's

first cause of action seeking enforcement of a security interest, unanimously reversed, on the law, without costs, the motion denied, and plaintiff's first cause of action reinstated.

Upon the death of her husband in 1969, plaintiff Naima Saleh directed her son, Joseph Saleh, to assume control of her financial and business affairs, including management of an apartment building located on West 90th Street in Manhattan. In 1982, plaintiff granted Joseph power of attorney over her affairs. In September 1984, plaintiff sold the apartment building to a cooperative corporation, and obtained a purchase money mortgage in the amount of $7.75 million. In 1988, at the request of Joseph and his wife, Angelika T. Saleh, plaintiff pledged the mortgage, together with additional securities, to secure a $4 million loan. The loan was used to retire outstanding debt of defendant Houston Cinema, Inc., and to secure a letter of credit, in the amount of $2.1 million, to finance the construction of a movie theatre in Manhattan (the Angelika Theater). Defendants Angelika Films, Inc. and Angelika Film Centers, Inc. were created to further this and other cinematic business purposes; Joseph Saleh was president, as well as a director and shareholder of Houston Cinema, Angelika Films, and Angelika Film Centers ("the corporations"). In March 1990, Joseph executed written security agreements on behalf of the corporations, purportedly in his capacity as president, evidencing a debt to plaintiff in the amount of $3 million and granting plaintiff a security interest in each corporation's receipts, accounts receivable, good will, and other assets. In November 1993, Joseph Saleh perfected these security agreements by filing UCC financing statements for each defendant. Shortly thereafter, Joseph commenced a divorce action against Angelika Saleh (Action No. 1). In March 1994, Naima Saleh commenced the instant action against the corporations (Action No. 2) seeking, *inter alia*, enforcement of the security interest. In their answer, the corporations denied that Naima Saleh had made loans to them, argued that any such loans were made to Joseph or Angelika Saleh, and asserted that Joseph Saleh had no authority to grant a security interest in their assets. In September 1995, the corporations moved for summary judgment dismissing the amended complaint and granting other relief, arguing, *inter alia*, that their boards of directors had never been informed of or approved the execution of the security interest. Plaintiff Naima Saleh cross-moved for declaratory relief and for summary judgment on the complaint. The court granted summary judgment to defendants to the extent of dismissing the plaintiff's first cause of action seeking enforcement of the security interest, and denied summary judgment

as to all other claims by all parties. Relying on Business Corporation Law § 911, the court held that the failure of the corporations' boards of directors to approve the security agreements rendered them invalid; it held further that Naima Saleh, having granted Joseph Saleh power to act as her attorney in fact, had no basis to claim that she relied on his signature to demonstrate the security agreements' validity. Plaintiff appealed.

We reverse the grant of summary judgment dismissing plaintiff's first cause of action. In light of the corporations' bylaws and past practices, as well as the uncertain scope of Joseph Saleh's authority and role as corporate officer, director, and shareholder, there remain material questions of fact as to the propriety of the execution of the security agreements on behalf of the corporations. The permissive language of Business Corporation Law § 911 ("The board may authorize * * * the creation of a security interest in, all or any part of the corporate property, or any interest therein, wherever situated") does not pose an absolute bar to the creation of security interests without board approval. While we have grave reservations about the conflicts possibly arising from Joseph Saleh's dual role as an officer of the corporations and his mother's financial agent, the propriety or impropriety of the security agreements simply cannot be determined on the record currently before us (see, Collision Plan Unlimited v Bankers Trust Co., 63 NY2d 827; 2 Fletcher, Cyclopedia of Corporations § 471 [perm ed]). Concur—Murphy, P. J., Rosenberger, Rubin and Mazzarelli, JJ.